CC: TO JUDGE ___ PM

___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

SEP 30 2002 PM

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY

Paul J Hirsh
4 Campus Drive, 1 S
P.O. Box 5534
Parsippany, N.J. 07054-5534
Attorneys for Plaintiffs

FREISE & WELCHMAN
108 S Washington Street, Suite 400
Seattle, Washington  98104
(206) 587-6570
Attorneys for Plaintiffs

CV 01-01915 #00000032

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

BIANCA FAUST, individually and
as guardian of GARY C. FAUST, a minor,
and BIANCA CELESTINE MELE,

      Plaintiffs,

vs.

BELLINGHAM, WASHINGTON LODGE #493
LOYAL ORDER OF MOOSE, INC.,
JOHN DOES (1-10) (fictitious names of unknown
Individuals and/or entities) and ABC
CORPORATION (1-10) (fictitious names of
unknown individuals and/or entities),

      Defendants.

: Civil Action No. C01-1915R

: DECLARATION OF EXPERT FRED
: DEL MARVA

DECLARATION OF EXPERT FRED DEL MARVA 1

ORIGINAL

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST  SUITE 400
SEATTLE  WASHINGTON 98104 • 206 587/6570
MICHAELH@FREISE WELCHMAN COM

Fred Del Marva, PI, PPO declares and states

1. I am over the age of eighteen years. I am a Federal and State court qualified expert in the hospitality industry (bars, restaurants, hotels, casinos, etc), specializing in premises liability, premises security, and liquor liability (Dram Shop) litigation

2. Since 1986 I have been retained in over 400 cases (both on the plaintiff and defense sides) in forty-eight (48) of the contiguous states, as well as Hawaii, Jamaica, the Dominican Republic, Puerto Rico, and Grand Cayman.

4. I have been retained in approximately one hundred (100) dram shop or liquor related incidents to consult, investigate, perform analyses, and testify as an expert

5. I have worked with toxicologists across the country and have studied responsible service of alcohol programs such as training programs in the states of Washington, Nevada, Missouri, Mississippi, New Jersey, Washington, Kansas, Illinois, Tennessee, New Mexico, Louisiana, Connecticut, Hawaii, Arizona, and industry approved training programs such as National Alcoholic Beverage Control Association Alcohol Server Liability; Michigan Licensed Beverage Association "Techniques of Alcohol Management" (TAM), National Restaurant Association "Alcohol Awareness Program", California Alcohol Beverage Control Board "Licensee Education on Alcohol and Drugs" (LEADS); American Hotel and Lodging Association "Serving With Care" and have been previously certified as a trainer in Anheuser Bush "Training for Intervention Procedures by Servers of Alcohol (TIPS).

6. I have been involved in the hospitality industry for over forty-five (45) years, twenty (20) of which have been as a restaurant, bar and hotel consultant. For the past sixteen (16) years, I have worked as a forensic investigator, liability consultant, security expert, and legal consultant. Attached hereto as Exhibit A is a copy of my current Curriculum Vitae.

7. This affidavit is in no way intended to be exhaustive. As additional information is made available to me, my opinions may be supplemented to reflect relevant new information.

8. In formulating the opinions contained herein, I have reviewed pleadings, Washington State Patrol's Report of Investigation, Defendant's Motion for Summary Judgment, Whatcom County Medical Examiner's Autopsy Report and Hawkeye Kinkaid's toxicology report.

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 • 206 587 6570
MICHAELH@FREISE WELCHMAN COM

DECLARATION OF EXPERT FRED DEL MARVA - 2

9. It is my understanding that Mr. Kinkaid entered the defendant's premise with his girlfriend Alexis Chapman at approximately 4:30 p.m. Ms Chapman was the bartender that evening and said that she served Mr Kinkaid only two beers, which is questionable because it is not his beverage of choice.

10. Ms. Chapman has changed her story three times regarding the times Mr. Kinkaid left the premises. The times range from 6:00 p.m. to between 6:00 p.m. and 6:30 p.m. and between 7:00 p.m and 7:30 p.m. The accident was reported to the police at 7:49 p.m And, in the motion for summary judgment, opposing council has estimated that the time Mr. Kinkaid left the premises was even earlier, between 5:45 p.m. and 6:00 p.m.

11. Ms. Chapman said that Mr. Kinkaid left the Moose lodge to buy some cooked chicken in a grocery store. The grocery store is approximately a fourteen (14) minute drive from the Moose lodge. The deli section starts to break down between the hours of 7:00 p.m. and 7.30 p.m. The scene of the accident is approximately a one (1) minute drive from the grocery store

12. Therefore, if Mr. Kinkaid left the Moose lodge at approximately 7:30 p.m he would have arrived at the grocery store at approximately 7:44 p m. to find the deli would have already been broken down. After spending a couple of minutes at the grocery store, he would have left the grocery store and would have driven for one (1) minute before being involved in the accident. That would bring the time line to 7:47 p.m., about the time of the reported accident

13. Mr. Rayburn (a patron at the bar at the time Mr. Kinkaid was there) stated in his declaration that Mr. Kinkaid *did not consume any alcohol, only two beers*. Based on my training in the programs noted in paragraph number 5, a twelve ounce bottle or can of beer has the same amount of alcohol as a one ounce shot of 100 proof liquor or a 1¼ ounce shot of 80 proof liquor Therefore I question the accuracy of Mr. Rayburn's observations at the defendant's premise.

14. I have read the declarations of both Mr. Rayburn and Mr Anderson and it is my opinion that both gentleman are not qualified to render an opinion on whether Mr. Kinkaid was obviously intoxicated, was or was not physically impaired, mentally impaired, unable to think rationally, and a danger to himself and others

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST  SUITE 400
SEATTLE  WASHINGTON 98104 • 206 587 6570
MICHAELH@FREISE WELCHMAN COM

DECLARATION OF EXPERT FRED DEL MARVA - 3

15. Based on the documents that I have reviewed, I am aware that Mr. Kinkaid's blood was drawn at approximately 8:49 p.m. and resulted in a BAC of .162. Based on my background, work with toxicologists, experience and training, it is my opinion that Mr. Kinkaid's BAC was approximately .177 at 7:30 p.m. and approximately .192 at 6:30 p.m. The increase in BAC is calculated by adding the absorption of one drink (.015 BAC) per hour.

16. Based on Mr. Kinkaid's BAC of .162 at 8:49 p.m., which would have been the same at the time of the accident and his demise, it is my opinion that he was obviously intoxicated when his girlfriend (Ms. Chapman) served him his last beverage and was obviously intoxicated prior to leaving the premises.

17. Based on the information contained in paragraph number 10, Mr. Kinkaid would have displayed signs of intoxication during the time he consumed alcohol at the defendant's premises such as loss of inhibitions, impairment of judgment, impairment of reactions, and impairment of coordination.

18. Ms. Chapman had been trained in the state mandated responsible service of alcohol program and in my opinion, because Mr Kinkaid was her boyfriend, consciously and intentionally deviated from that training which is a conscious disregard for the safety of patrons and others they may encounter. And, in my opinion this conduct constitutes gross negligence.

19. Based on my review and analyses of the circumstances and facts relevant to the injury sustained by the plaintiffs, it is my opinion that the defendant, its servants, agents, representatives and employees, violated RCW 66.44.200 and WAC 314-16-150, breached industry standards, violated the instructions and procedures addressed in the Washington State Liquor Control Board's "Handbook for Liquor Licenses and Employee's" and were both directly and indirectly responsible for the injuries to the plaintiffs.

20. It is my opinion, and one to which I will testify at trial if called upon, that on the night of the incident at the defendant's premises indisputable circumstances existed which created a reasonably foreseeable risk to one's safety, and that such safety risk, would have been reasonably anticipated by a responsible, prudent, and professional operator of a bar and their staff

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 • 206-587 6570
MICHAELH@FREISEWELCHMAN.COM

DECLARATION OF EXPERT FRED DEL MARVA - 4

21. Based on the totality of the circumstances, I further opine that the methodology and principles employed by the defendant with regard to the responsible service of alcohol breached industry standards and were not consistent with those that would have been employed by a reasonable operator given the same circumstance.

22. The state of Washington issues liquor licenses to businesses who want to serve alcohol. The Moose Lodge, although a fraternal order, bears the same duties and responsibilities as a saloon operating in the same state. Those duties are to insure that the providers of alcohol do not serve patrons who are obviously intoxicated. It is obvious to me, and my opinion, that this defendant deviated from and breached that duty.

23. Lastly, it is my opinion that the conduct of the defendant and their employees, by irresponsibly serving Mr. Kinkaid alcohol and allowing him to leave the premise, enter his vehicle and drive away while obviously intoxicated, was the proximate cause of the injuries sustained by the plaintiffs.

I declare under penalty of perjury of the laws of the State of Washington that the foregoing is true and correct.

EXECUTED at Novato, California, this 26 day of September, 2002

_____
Fred Del Marva, PI, PPI

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST   SUITE 400
SEATTLE  WASHINGTON 98104 • 206 587 6570
MICHAELH@FREISE WELCHMAN COM

DECLARATION OF EXPERT FRED DEL MARVA - 5