Honorable Barbara Jacobs Rothstein



FREISE & WELCHMAN
108 S Washington Street, Suite 400
Seattle, Washington 98104
(206) 587-6570
Attorneys for Plaintiffs



CV 01 01915 #00000089

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BIANCA FAUST, individually and as guardian of GARY C FAUST, a minor, and BIANCA CELESTINE MELE,<br><br>Plaintiffs,<br><br>vs<br><br>BELLINGHAM, WASHINGTON LODGE #493 LOYAL ORDER OF MOOSE, INC., ESTATE OF HAWKEYE KINKAID, JOHN DOES (1-10) (fictitious names of unknown individuals and/or entities and ABC CORPORATION (1-10) (fictitious names of unknown individuals and/or entities), | Civil Action No C01-1915R<br><br>**PLAINTIFFS' TRIAL BRIEF** |

Comes now the Plaintiffs, by and through their attorneys of record and presents this Court with a brief concerning the pertinent issues expected to be raised in the trial

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -1

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 • 206 587 6570
ERICF@FREISE WELCHMAN COM

**ORIGINAL**

## STATEMENT OF FACTS

On April 21, 2000 Hawkeye Kinkaid left the BELLINGHAM, WASHINGTON LODGE #493 LOYAL ORDER OF MOOSE, INC., (hereinafter "Moose Lodge") The precise time that he left the Moose Lodge remains a disputed fact issue for the jury What is not in dispute is that shortly before 7:46 p m , the van that Mr Kinkaid was driving struck the vehicle in which the plaintiffs were occupants Mr Kinkaid caused the collision Mr Kinkaid was killed, and the plaintiffs sustained serious bodily injury The minor plaintiff, Gary Faust, was left a paraplegic as a result of the accident Plaintiffs have filed suit to recover damages from the defendants under the theories that the Moose Lodge overserved served alcohol to Mr Kinkaid while he was obviously intoxicated, that a special relationship existed between the Moose Lodge bartender (Alexis Chapman) and Mr Kinkaid and that the improper service of alcohol was the legal cause of the accident It also alleged that Mr. Kinkaid's conduct is a cause of this accident

At approximately 4:30 p m on the day of the accident Alexis Chapman and Hawkeye Kinkaid, who had a romantic relationship and were living together, arrived at the Moose Lodge Ms Chapman claims that Mr Kinkaid was at the Moose Lodge and drank two bottles of Miller Genuine Draft Beers and that he looked sick and pale

Ms Chapman has given different statements as to the time that Mr Kinkaid left the Moose Lodge Her statements to plaintiffs' investigators shortly after the time of the accident were that Mr Kinkaid left the lodge between 7 00 p m and 7:30 p m She furthered stated that Mr Kinkaid was telling people around the kitchen what to do, and that she instructed him to go home Mr Kinkaid told her that he was going to Cost Cutters in Ferndale to buy chicken for his dinner She further indicated that she saw a bottle of Black Velvet alcohol in Mr Kinkaid's van

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -2

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 • 206 587 6570
ERICF@FREISE WELCHMAN COM

on the day of the accident. The same basic account of events was again relayed to plaintiffs' investigators on January 5, 2001  On June 7, 2001, Ms Chapman informed plaintiffs' investigators that Mr Kinkaid left the Moose Lodge at 6 00 p m , and that he came to and left the Moose Lodge by himself

As a result of her differing accounts of the time-line events, and the behavior of Mr Kinkaid, plaintiffs intend to challenge Ms Chapman's credibility  Trooper Wilson was the first investigating officer to arrive on the scene  He indicated to Trooper J P Van Diest that alcohol was possibly involved (Report of Investigation)  Beside the driver's seat was a 40 once bottle of alcohol, of which some of the contents were removed  Steven Gamage, an officer with Ferndale Police Department investigated the accident  He stated in his narrative report that upon approaching the van that had been driven by Kinkaid, he noticed the bottle of alcohol  He also stated that both the van and Mr Kinkaid had a strong odor of alcohol (Police Report)  Mr Kinkaid's blood alcohol level at the hospital, after significant dilution with the intravenous administration of medication, was of 16% gm  His blood alcohol probably reached 32 % gm, the equivalent of twenty-one (21) twelve ounce containers of beer or twenty-six (26) ounces of 90 proof alcohol  The autopsy report further revealed that the contents of Mr. Kincaid's stomach was cloudy viscosity fluid with gross smell of alcohol (Autopsy report)

Other individuals acquainted with Mr Kinkaid have indicated that Mr Kinkaid rarely drank beer, but rather consistently drank Black Velvet whiskey and Diet Pepsi  The bottle of alcohol found in his car was Black Velvet  Mr John Herford, the owner of a bar called "Pioneer's" indicated that prior to the accident Mr Kinkaid was a regular patron of his

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -3

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST  SUITE 400
SEATTLE  WASHINGTON 98104 ♦ 206 587 6570
ERICF@FREISE WELCHMAN COM

establishment and could, over the course of an evening, consume half of a bottle of Black Velvet whiskey

Ron Beers, a Moose Lodge Member, stated that he witnessed Ms Chapman over serve patrons. Mr Beers also stated that on prior occasions when he saw Mr Kinkaid in an obviously intoxicated state at the Moose Lodge, he became belligerent. Ms Chapman continued to serve Mr Kinkaid drinks until Mr Kinkaid left  Mr Beers goes to the Moose Lodge often and he never saw Mr Kinkaid drink beer at the Lodge, only alcohol and a mixer  He would see Mr Kinkaid at the Moose Lodge about three (3) or four (4) times a week, when Ms Chapman was bartending  Mr Kinkaid was at the Moose Lodge most of the time when Ms Chapman was bartending

## POINTS AND AUTHORITIES

### I. APPLICABLE LAW CONCERNING LIABILITY.

#### A. Liability Based on Obvious Intoxication.

Although the State of Washington at one time statutorily regulated the liability of vendors of alcohol through a Dram Shop Act, the Act was repealed by the legislature in 1955. Recognizing that some degree of liability should remain, the Washington Supreme Court in *Halvorson v Birchfield Boiler, Inc*, 76 Wash 2d 759, 458 P 2d 897 (1969), adopted a common law standard of liability under which no liability would attach to the sale or giving of alcoholic beverages, provided the recipient was an ordinary able-bodied individual  Now, it is recognized in Washington that liability will be imposed when alcohol is served or provided to persons who are obviously intoxicated, helpless, or in a special relationship to the furnisher of the intoxicants *Dickinson v Edwards*, 105 Wash 2d 457, 716 P.2d 814 (1986); *Young v Caravan Corp*, 99

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -4

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST  SUITE 400
SEATTLE  WASHINGTON 98104 ♦ 206 587 6570
FRICF@FREISE WELCHMAN COM

Wash 2d 655, 663 P 2d 834 (1983), *Wilson v Steinbach*, 98 Wash 2d 434, 656 P 2d 1030 (1982); *Rhea v Grandview School Dist No JT 116-200*, 39 Wash App 557, 694 P 2d 666 (1985)

In *Christen v Lee*, 113 Wash 2d 479, 491, 780 P 2d 1307 (1989), the court concluded that evidence of the driver's blood alcohol content could not stand as conclusive evidence that the driver was obviously intoxicated when served However, as recognized in *Cox v Keg Restaurants U S Inc*, 86 Wash App 239, 935 P 2d 1377 (1997), the blood alcohol content of the driver is probative evidence of the driver's intoxication To prevail on a claim based on the theory of obvious intoxication, evidence of the driver's appearance at the time of service is also required

Where it can be established that the investigating officer arrived and observed the scene shortly after the patron left the drinking establishment, such evidence may be considered as circumstantial evidence that the patron was obviously intoxicated shortly before the accident *Dickson v Edwards*, 105 Wash. 2d 457, 716 P 2d 814 (1986) This type of circumstantial evidence is available here Given the relatively short time period (not more than forty-five minutes) from the time he was observed leaving the Lodge and the time of the accident, Mr. Kinkaid could not reasonably have consumed additional alcohol that would have rendered him incapacitated Thus, the reasonable inference is that he was obviously intoxicated when he was served and when he left the Moose Lodge

In the instant dispute, the blood alcohol level of Mr Kinkaid, as evidenced in the autopsy reports, clearly establishes that the man was intoxicated, and at a level well-beyond

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -5

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST  SUITE 400
SEATTLE  WASHINGTON 98104 ♦ 206 587 6570
ERICF@FREISE WELCHMAN COM

what he could have physiologically achieved by consuming the two beers allegedly served to him by Ms Chapman

Additional evidence of Mr Kinkaid's level of intoxication at a time in close proximity to the accident, and as demonstrated below, at a time in close proximity to the time he left the Moose Lodge further establish that Mr Kinkaid was obviously intoxicated. The investigating officers at the scene observed that the vehicle and Mr Kinkaid had a strong odor of alcohol

When this evidence is considered in light of Ms Chapman's initial account of the events on the night of the accident, and Mr Kinkaid's behavior, plaintiffs will be able to establish that Ms Chapman had actual knowledge that Mr Kinkaid was obviously intoxicated and that she continued to serve him alcohol, thereby establishing liability

B. **Liability Based on Existence of Special Relationship.**

The instant case is also unique in that Ms Chapman, the Moose Lodge bartender, was romantically involved with him for about one and one-half years before the accident and actually drove to the Moose Lodge with him on the day of the accident. She reported to investigators that she observed the bottle of alcohol in Mr Kinkaid's van and that he would purchase a similar amount of alcohol approximately every two weeks. She was also aware, from their personal relationship, of how a particular amount of alcohol would affect Mr Kinkaid. Thus, she was in a uniquely personal position to know how much he had consumed before arriving at the Moose Lodge, what his former patterns of consumption were, and how a given amount of alcohol would affect him. Furthermore, she controlled how much alcohol Mr Kinkaid consumed at the Moose Lodge on April 21, 2000

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -6

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 ♦ 206 587 6570
ERICF@FREISE WELCHMAN COM

The *Halvorson* court was faced with a situation in which a social guest was provided alcohol. The court was unwilling to impose upon the social host a greater burden of overseeing the individual consuming alcohol. However, the court noted:

> [The plaintiffs] assert that the defendants knew Mr. Wolf had a drinking problem, that he, therefore, was not a strong and able-bodied man and was incapable of voluntarily resisting becoming intoxicated.
> We do not think that these allegations create the distinction suggested by plaintiffs. Mr. Wolf is not a person under legal disability nor has he been interdicted under RCW 71.08. There may be good reason to place the licensed vendor of liquors under a burden suggested by plaintiffs, but we need not consider such a possibility in this case. Here we have a social event involving many people where liquor is available, but not sold in the sense of an individual order or procurement to or from a person in a position to adjudge the physical condition of each guest. *Id.* at 900.

Thus, the *Halvorson* court recognized that different levels of due care may be warranted for a commercial vendor that are not appropriately placed upon a social host. The *Halvorson* court was not specifically asked to determine what situations would warrant the recognition of a special relationship in a common law dram-shop claim. But various opinions from the Washington court's lend some guidance as to when such a special relationship should be recognized.

"Where a special relationship exists, a party may be obliged to control another's actions for the protection of third parties. W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Torts §§ 56, at 383 (5th ed. 1984)." *Dickinson v. Edwards*, 105 Wash. 2d 457, 716 P.2d 814, 822 (1986) (Utter, J.) (concurring opinion). Thus, for instance, a school has a duty to protect students within its custody from reasonably anticipated dangers, an innkeeper has a duty to protect its guests, and a hospital its patients. *Niece v. Elmview Group Home,* 131 Wash. 2d 39, 44-45, 929 P.2d 420 (1997). Similarly, even where an employee "is acting outside the scope

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -7

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 • 206 587 6570
ERICF@FREISEWELCHMAN.COM

of employment, the relationship between employer and employee gives rise to a limited duty, owed by an employer to foreseeable victims, to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering other." *Niece,* 131 Wash. 2d at 48, 929 P.2d 420.

A special relationship giving rise to a duty to prevent harm need not be "custodial or continuous," but arises where the ability to supervise is present and necessity for such supervision is or should be known. *Peterson v. State,* 100 Wash. 2d 421, 428-429, 671 P.2d 230 (1983). A showing of agency is not required. *Taggart v. State,* 118 Wash. 2d 195, 223-224, 822 P.2d 243 (1992) (duty to control does not require agency relationship but arises where ability to control is present).

Ultimately, where a "special relationship" giving rise to a legal duty exists involves the balancing of the societal interests involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence, the relationship between the parties, the temptation presented by the act or failure to act, the gravity of the harm that may result, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take. *Lawrence v. Lauritzen,* 74 Wash. App. 432, 442, 874 P.2d 861 (1994).

In *Niece v. Elmview Group Home, supra,* the court inferred that a special relationship may exist between a business owner and an invitee of that business for purposes of creating a duty of safeguarding the invitee. The court further recognized that the special relationship could either create a duty on the part of the actor to safeguard the invitee from harm, or to otherwise control the actions of the invitee.

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -8

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 ◆ 206 587 6570
FRICF@FREISE WELCHMAN COM

The existence of a special relationship was also recognized between a psychiatrist and a patient, thereby obligating the physician to take reasonable precautions to protect third parties *Peterson v State, supra* Because of the unique relationship between the two, and the knowledge on the part of the psychiatrist concerning that patient's past behavior, the physician possessed a particular knowledge on which the special relationship could be based

In *Nivens v 7-11 Hoagy's Corner*, 133 Wash 2d 192, 943 P 2d 286 (1997), the court specifically recognized that a special relationship existed between a business and its invitee for purposes of imposing liability upon a store proprietor under the principles set forth in the Restatement (Second) of Torts § 315  Although the court was concerned with whether the store owner owed a duty of care to its invitee to protect the invitee from the criminal acts of a third party, the basis of the duty was the existence of a special relationship as defined in the Restatement  The same definition of a special relationship is applicable to the instant inquiry concerning the duty to stop serving alcohol  The *Nivens* court held

> What we have impliedly recognized in earlier cases, we now explicitly hold. a special relationship exists between a business and an invitee because the invitee enters the business premises for the economic benefit of the business  As with physical hazards on the premises, the invitee entrusts himself or herself to the control of the business owner over the premises and to the conduct of others on the premises  Such a special relationship is consistent with general common law principles

*Id*

Although the *Nivens* court was concerned with the obligation of the business to protect its patron from the foreseeable criminal acts of third parties, its reasoning is equally applicable here  It is the existence of the special relationship which creates a duty of care in the present instance  That existence of the special relationship obligated the Moose Lodge (through Alexis

PLAINTIFF'S TRIAL BRIEF  
(C01-1915R) -9

FREISE & WELCHMAN  
ATTORNEYS AT LAW  
108 S WASHINGTON ST  SUITE 400  
SEATTLE  WASHINGTON 98104 ♦ 206 587 6573  
ERICF@FREISEWELCHMAN COM

Chapman) to protect its patrons from the foreseeable criminal acts of third parties. It also obligated Ms. Chapman to assume a protective relationship over Mr. Kinkaid. The existence of the special relationship creates a duty of care to third persons who could be foreseeably harmed by the invitee's actions.

In the unique factual scenario of the present dispute, the recognition of a special relationship is clearly appropriate. Ms. Chapman was charged with the statutory duty not to serve an individual who was under the influence of alcohol. RCW 66.44.200. She was also involved romantically with Mr. Kinkaid for a period of time, during which, she frequently observed Mr. Kinkaid consume various amounts of alcohol. Thus, she had personal knowledge of his drinking patterns and his degrees of intoxication. This special relationship obligated her to exercise reasonable care in serving Mr. Kinkaid alcohol when a reasonably prudent person in her situation would have refrained. *Compare Williams v. Kingston Inn, Inc.*, 58 Wash. App. 348, 792 P.2d 1282 (Wash. App. 1990) (where court declined to recognize any duty to control patron's action after patron left facility and altercation occurred two hours after patron left bar).

It is undisputed that Ms. Chapman served Mr. Kinkaid alcohol on the night of the fatal crash. The existence of the special relationship between the business owner and the invitee eliminates the necessity of establishing that Mr. Kinkaid was obviously intoxicated at the time he was served for purposes of establishing liability to a foreseeably injured third party.

An employer-host is held to be in a special relationship with the employee-guest when alcohol is served. *Dickinson v. Edwards* (concurring opinion). A parole officer is in a special relationship with a parolee so that liability may be imposed upon the parole officer when the parolee injures a third party. *Taggart v. State, supra.* Imposing the same standard of care on a

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -10

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST  SUITE 400
SEATTLE WASHINGTON 98104 ♦ 206 587 6570
ERICF@FREISEWELCHMAN.COM

commercial vendor of alcohol whose employee was personally involved with the drunk driver will not open a flood-gate of litigation by other seeking to impose liability upon a commercial vendor By limiting the recognition of a special relationship to the unique facts of this case, the principles of Washington jurisprudence may more fully be served

II. ANTICIPATED EVIDENTIARY ISSUES

Plaintiffs anticipate several evidentiary issues to arise during the course of this litigation

### A. Prior Inconsistent Statement of Alexis Chapman.

Defendants have previously asserted that the prior inconsistent statements of Ms Chapman are impermissible hearsay statements As previously briefed to the Court, this is not the case Her statements are admissible under Rule 801(d)(2), as admissions against interest of an employee of the defendant She need not have been specifically authorized by the Lodge to make the communication. Instead, the nature of the communication must have involved matters within the scope of her employment with the Moose Lodge The amount, nature and timing of her service to a patron is squarely within the scope of a bartender

> Contrary to the State's view, the rule does not require a showing that the statement is within the scope of the declarant's agency Rather, it need only be shown that the statement be related to a matter within the scope of the agency See Fed R Evid 801, Notes of Advisory Committee on Proposed Rules Because the report was prepared pursuant to the direction of the Secretary of the Department of Social and Health Services, it was not an abuse of discretion for the district court to conclude that the statements contained in the report were within the scope of the declarant's agency

*Hoptowit v Ray*, 682 F 2d 1237, 1262 (9th Cir 1982) *See also In re Sunset Bay Associates*, 944 F 2d 1503, 1519 (9th Cir 1991) (statement need only concern matter within scope of

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -11

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 ♦ 206 587 6570
ERICF@FREISE WELCHMAN CM

1  employment to satisfy 801(d)(2)(D)), *Harris v Itzhaki*, 183 F.3d 1043 (9th Cir 1999) (statement was admissible since it relates to a matter within the scope of the agency)

Such statements may also be used for purposes of impeachment on cross-examination.

## B. Evidence Pertaining to Ms. Chapman's Previous Employment.

Plaintiffs will seek to introduce evidence from Ms Chapman's prior employer, dealing particularly with the fact that Mr Kinkaid routinely drove her to work This evidence will be offered to contradict Ms Chapman's anticipated direct testimony that she and Mr Kinkaid arrived separately

Evidence will also be presented that Ms Chapman came to work inebriated on more than one occasion In *Brunet v United Gas Pipeline Co* 15 F 3d 500 (5th Cir 1994), the court allowed evidence of a crew's previous intoxication and drug use to be admitted on the issue of the employer's negligent hiring

> Impeachment is an attack upon the credibility of a witness. A witness' testimony may be contradicted without being impeached. *United States v Williamson*, 5 Cir , 424 F 2d 353, 355 (1970)

*U S v Finis P Ernest, Inc* , 509 F 2d 1256, 1263 (7th Cir 1975)

Evidence may be used to contradict Ms Chapman's direct testimony, as permitted under Fed R Rule 607 When used in this manner, use of specific instances of misconduct are not used to impeach the witnesses' general character, which would conflict with Fed R Evid 608(b)

> This category covers "the contradiction of any part of the witness' account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true " For example, if a witness to an auto accident testifies that it took place on a sunny day, extrinsic evidence that the accident took place during a blizzard and at

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -12

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST  SUITE 400
SEATTLE  WASHINGTON 98104 ♦ 206 587 6570
ERICF@FREISE WELCHMAN COM

night should be admitted even if weather and ability to perceive are not issues If the witness is to be believed as to any part of his description of the accident, he could not be so mistaken about such an obvious part of the surrounding circumstances This category of noncollateral facts again is consistent with Rule 403 Even though these facts are not probative of any substantive issue in the case, they shed sufficient light on the issue of witness credibility to warrant the time spent hearing extrinsic evidence

27 Charles Wright and Arthur Miller, Federal Practice & Procedure § 6096 at 543 (2002)

The use of contradiction evidence in this manner was addressed by the court in *US v Castillo*, 181 F 3d 1129, 1132 -1133 (9th Cir 1999)

> Although Castillo briefed and argued the district court's ruling under Rule 608(b), impeachment by contradiction is not governed by that subsection As one commentator has observed, "[c]ounsel and courts sometimes have difficulty distinguishing between Rule 608 impeachment and impeachment by contradiction " 4 Joseph M McLaughlin, *Weinstein's Federal Evidence,* § 608 12[6][a] at 608-41 (2d ed 1999) ("Weinstein") Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness' credibility in terms of his general veracity In contrast, the concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence
> [D]irect-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral This approach has been justified on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine
> 2A Charles A Wright & Victor J Gold, *Federal Practice and Procedure,* § 6119 at 116-17 (1993) ("Wright") In *United States v Chu,* 5 F 3d 1244, 1249 (9th Cir 1993), we recognized the distinction between evidence governed by Rule 608(b) and evidence offered to impeach by contradiction

By applying the provision of Fed R. Evid 403 to the evidence plaintiff seeks to introduce as contradictory evidence, the overwhelming importance of the contradiction become apparent The defendant's defense to the claims raised in the instance matter rests almost

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -13

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST   SUITE 400
SEATTLE  WASHINGTON 98104 ♦ 206 587 6570
ERIC F@FREISE WELCHMAN COM

entirely upon the testimony of Ms Chapman, a woman who was romantically involved with Mr Kincaid The possibility that any aspect of her testimony is less than accurate casts grave doubt upon her veracity and the jury should be free to determine whether her testimony is credible Thus, her statements concerning her training, her prior conduct with intoxicated patrons, and the particular events of the evening of the accident are crucial, and should be subject to impeachment by contradiction

### C. Lodge Member's Testimony Concerning Ms. Chapman's Service of Patrons.

Plaintiffs will offer the testimony of a patron of the Moose Lodge who will testify that on more than one occasion he witnessed Ms Chapman serve Mr Kinkaid at the Lodge when he was in an obvious state of intoxication Contrary to defendant's assertions, this evidence is not offered to establish that Ms Chapman acted in conformity with prior instances Instead, this evidence is offered to establish that Ms Chapman had actual first-hand knowledge of when Mr Kinkaid was intoxicated and that the Moose Lodge negligently trained and supervised her

As with the evidence described above, this testimony may be offered to impeach Ms Chapman's direct testimony by contradiction This evidence also has independent relevance that removes any hearsay issues since it may be offered to establish knowledge on the part of Ms. Chapman of Mr Kinkaid's intoxication

### D.     Habit Testimony Pursuant To Rule 406

Rule 406 allows the introduction of evidence of the habit of a person for the purpose of proving that the person acted in conformity with his habit on a particular occasion

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -14

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 ✦ 206 587 6570
FRICE@FREISE WELCHMAN COM

Habit evidence is considered to be highly probative and therefore superior to character evidence because "the uniformity of one's response to habit is far greater than the consistency with which one's conduct confirms to character or disposition." *McCormick* on Evidence §195 at 463 (2d ed. 1972). *Loughan v. Firestone Tire & Rubber Co.*, (11th Cir. 1985) 749, 1523-1524, in a suit by tire mechanic against tire manufacturer, arising out of an accident in 1974 in which rim wheel assembly flew apart with explosive force while plaintiff was mounting a tire, trial court properly applied FRE 406 in admitting evidence of drinking by plaintiff, in the form of (a) testimony by his former employer to the effect that between 1969 and 1971 he "drank too much," (b) testimony by a supervisor in his present job that he "routinely carried a cooler of beer on his truck" and "was in the habit of drinking on the job" to the point where customers complained, and that he "'normally' had something to drink in the early morning hours," and (c) testimony by plaintiff himself that he "carried a cooler of beer on his truck" and "would drink beer at some time between the hours of 9 a.m. and 5 p.m.," this evidence "rose to the level of habit pursuant to Rule 406."

*Keltner v. Ford Motor Co.* (8th Cir. 1984) 748 F.2d 1265, 1268-1269, (is a personal injury suit against an automaker alleging that jamming of doors after collision enhanced plaintiff's injuries. The reviewing court rejected the argument by plaintiff that trial court erred in admitting evidence of his "drinking habits" because "his drinking was not regular enough to be characterized as a habit."

*Cf. Hadley v. Baltimore & O R Co.* (3rd Cir. 1941) 120 F.2d 993, 995 (where evidence showed plaintiff was intoxicated at time of accident, no error to receive proof of previous

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -15

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST   SUITE 400
SEATTLE  WASHINGTON 98104 ● 206 587 6570
ERICF@FREISE WELCHMAN COM

instances in which plaintiff had been picked up by police in state of intoxication, offered not to prove that plaintiff was drunk at the time but to show effect which intoxicants had upon him

FRE 406 makes it clear that habit evidence is admissible "whether corroborated or not," but clearly the Rule leaves unaffected the question whether habit evidence is sufficient to support a jury finding of any particular fact. Obviously evidence of steady or daily indulgence has great probative worth on the question of intoxication on a given occasion, as does proof that a person consumes alcohol on a recurrent and specific basis, such as at not on Fridays, or on a particular evenings, or during a particular work break, at least when the time in issue coincides with or follows closely such period of habitual consumption

Relevant is the Statement by the Department of Justice that, ("[T]he trial judge should have discretion to admit, at least on cross-examination, testimony of an individual's routine which did not meet the standard of habit, established in Rule 406 For example, an individual may be known to stop routinely for a drink on his way home from work so that he normally did not arrive home until 7 30 p m If he testified that he was home at 6 30 p m, and this was material to his testimony, it would seem that he should at least be subject to cross-examination on the reasons why he departed from his usual routine on this particular occasion "), set forth as enclosure in the letter of May 18, 1973, Professor Edward W Cleary to Herbert E Hoffman, Esq , House Hearings (Supp), at 84-87 See also Mr Cleary's reply, set forth in his letter of May 29, 1973, to Herbert E Hoffman, Esq , id , at 96-97 ("It was believed that the drafting of a rule along these lines would prevent very great difficulties and no specific proposal was suggested The rule as it stands does not in terms foreclosure this kind of inquiry, and general considerations of relevancy would seem properly to govern ") True habit evidence

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -16

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 ♦ 206 587 6570
ERICF@FREISE WELCHMAN COM

, evidence of semiautomatic behavior on the other similar occasions, can be highly probative of conduct on a particular occasion. The often unconscious nature and unvarying regularity of habits strongly suggest the likelihood of repetition

### E. Expert Testimony

Plaintiffs intend to offer the testimony of several expert witnesses These witnesses have revealed the basis of their opinions and provided defendant with reports

Expert evidence concerning Mr Kinkaid's blood alcohol level at the time of the autopsy and by extrapolation, at other times during that night constitutes relevant admissible evidence that will serve to bolster the antidotal evidence concerning the obviousness of his intoxication

Other courts have concluded that such use of expert testimony concerning blood alcohol levels are admissible

> The BAC evidence was relevant to enhance the credibility of these observations The trial court also afforded The Keg latitude to cross-examine Murren as to the relationship between BAC and obvious intoxication, and to argue this theory to the jury In this context, the evidence was relevant, and its admission was within the discretion of the trial court

*Cox v Keg Restaurants U S , Inc* , 86 Wash App 239, 250, 935 P 2d 1377, 1383 (Wash App 1997)

Here, there is evidence in the form of Ms Chapman's initial statement to plaintiff's investigator concerning Mr Kinkaid's behavior that night and the necessity of sending him home because he was becoming belligerent Other testimony from other witnesses indicate that Mr Kinkaid routinely acted in such a manner when he was intoxicated, and that Ms Chapman was aware of this fact When the expert testimony is considered in this light, added to it, the

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -17

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 • 206 587 6570
ERICF@FREISEWELCHMAN.COM

fact that he could not have left the Moose lodge until approximately 7 30, evidence of his blood alcohol level lends credibility to such evidence

Furthermore, the provisions of Fed R Evid 703 permit expert testimony to be based on first-hand knowledge, admitted evidence, or other evidence routinely relied upon in the field Thus, the mere fact that any of the experts relied upon hearsay statements, as previously alleged by the defendants, is immaterial to the admission of the expert testimony

*Paddack v Dave Christensen, Inc* 745 F 2d 1254, 1261 (9th Cir 1984) (expert opinion may be based on hearsay evidence)

## CONCLUSION

Plaintiffs have sufficient proof to establish that Ms Chapman, an employee of the defendant Moose Lodge, served Mr Kinkaid alcohol at a time when he was obviously intoxicated, and therefore, the defendants are responsible for the damages proximately caused by the collision

DATED        March 24, 2003

                                      FREISE & WELCHMAN

                                      By _____

                                      Peter Lawson
                                      WSBA # 28886
                                      Of Attorneys for Plaintiffs

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -18

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST  SUITE 400
SEATTLE  WASHINGTON 98104 • 206 587 6570
ERICF@FREISE WELCHMAN COM

PAUL J. HIRSH, P.C.

By _____
Paul J. Hirsh
Attorneys for Plaintiffs

PLAINTIFF'S TRIAL BRIEF
(C01-1915R) -19

FREISE & WELCHMAN
ATTORNEYS AT LAW
108 S WASHINGTON ST SUITE 400
SEATTLE WASHINGTON 98104 206-587-6870